**Hugh ARMSTREET et al., Appellants,**

**v.**

**Billy Earl GREER et al., Appellees.**

**No. 239.**

Court of Civil Appeals of Texas.

Tyler.

Jan. 26, 1967.

Rehearing Denied Feb. 16, 1967.

Musslewhite & Musslewhite, Benton Musslewhite, Lufkin, for appellants.

McLeroy & McLeroy, Tom McLeroy, Center, for appellees.

DUNAGAN, Chief Justice.

This appeal is from a summary judgment granted the defendants below. Suit was instituted in the District Court of Shelby County, Texas, by Hugh Armstreet and wife, Zellene Armstreet, and the Estate of Robert Hampton Armstreet, deceased, appellants, seeking damages against Billy Earl Greer and O. L. Greer and wife, Louise Greer, appellees, for the alleged wrongful death of appellants' son, Robert Hampton Armstreet, who received fatal injuries in an automobile collision near Shelbyville, Shelby County, Texas, on November 10, 1964. It was alleged by appellants Hugh Armstreet and wife, Zellene Armstreet, that on the date aforesaid their son, Robert Hampton Armstreet, was driving an automobile on Farm Road No. 417, a two-lane roadway. As he approached a rise, he was suddenly confronted by two oncoming automobiles traveling side by side at a tremendous rate of speed, occupying both lanes of traffic, apparently engaged in drag racing. One of the automobiles was being operated by Osborne Adams, Jr. and the other by appellee, Billy Earl Greer, and there were other occupants in both vehicles. It was alleged that appellants' decedent, finding himself faced with this emergency, had no alternative but to collide with the Adams's vehicle traveling in his lane of traffic. As a result of the collision, both Robert Hampton Armstreet and Osborne Adams, Jr. received fatal injuries. It was further alleged that following the accident, appellee Billy Earl Greer left the scene of the accident without stopping to render aid. Actionable negligence and gross negligence were alleged against the appellees. Damages were sought under the Wrongful Death Statute [1] and the Survival Statute.[2] Appellees answered, denying the allegations contained in appellants' petition and alleging that appellants' decedent, Robert Hampton Armstreet, was guilty of contributory negligence on the occasion in question, and alternatively, that the collision was the result of an unavoidable accident. Subsequently, appellees filed a motion for summary judgment, asserting as a basis therefor that in December, 1964, the appellants, for a consideration of $7,500.00, had executed and delivered to the Estate of Osborne Adams, Jr., deceased; O. F. Adams, Sr. and Mrs. O. F. Adams,

1. Art. 4671, et seq., Revised Civil Statutes of Texas, 1925.

2. Art. 5525, Revised Civil Statutes of Texas, 1925.

Sr., a "full, final and complete Release" of any and all claims and causes of action by reason of the death of Robert Hampton Armstreet. Appellees assert that inasmuch as Osborne Adams, Jr. and Billy Earl Greer were joint tort-feasors on the occasion made the basis of the suit, the giving of the release by appellants had the effect of releasing appellees. Appellants concede that Osborne Adams, Jr. and Billy Earl Greer were joint tort-feasors. In view of the fact that the Release is the focal point for the determination of this appeal, it is reproduced herein as it appears in the Transcript.[3] A photocopy of the release was attached to appellees' mo-

3. STATE OF TEXAS ⎱
   COUNTY OF SHELBY ⎰

WHEREAS, on the or about 10th day of November, 1964, on Farm Road No. 417, in Shelby County, Texas, a motor vehicle being driven by O. F. Adams, Jr., and owned by O. F. Adams, Sr., father of the said O. F. Adams, Jr., was involved in a collision with a motor vehicle being driven by Robert Hampton Armstreet, which said collision resulted in the deaths of both the said O. F. Adams, Jr., and the said Robert Hampton Armstreet;

WHEREAS, Robert Hampton Armstreet, at the time of his death was a minor child whose parents were Robert Hugh Armstreet and Zellene Armstreet, husband and wife, of Shelby County, Texas, and the said Robert Hugh Armstreet and wife Zellene Armstreet, assert that said collision and the death of their said minor son, resulted from facts which would cause O. F. Adams, Sr., his wife, Mrs. O. F. Adams, Sr., and the estate of O. F. Adams, Jr., deceased, to be liable therefor:

WHEREAS, the said O. F. Adams, Sr. and Mrs. O. F. Adams, Sr., and the estate of O. F. Adams, Jr., deceased and each of them have denied, and still deny, any liability whatever on account of any damages to anyone arising out of said collision because of bodily injuries to, and the death of, the said Robert Hampton Armstreet, or because of any property damage which may have been suffered by any person, firm or corporation, as a result of said collision, but, nevertheless, the said O. F. Adams, Sr., Mrs. O. F. Adams, Sr., and the estate of the said O. F. Adams, Jr., deceased, have agreed, in order to avoid the expense and harassment of litigation and to buy their peace, and for no other reason, they will jointly pay to the said Robert Hugh Armstreet and wife, Zellene Armstreet, the total sum of $7,500.00, such agreement being with the express understanding that neither such agreement, nor this instrument, nor any payment made by virtue hereof, is to be considered as or adopted to be used as, any admission whatever of any liability whatever on the part of the said O. F. Adams, Sr., Mrs. O. F. Adams, Sr., or the estate of O. F. Adams, Jr., deceased, or any one or more of them, to any person, firm or corporation whatever on account of, arising out of, or having to do with, any alleged damages to anyone as a result of said collision between said motor vehicles; and

WHEREAS, said sum of SEVEN THOUSAND, FIVE HUNDRED AND NO/100 DOLLARS, IN CASH, HAS BEEN PAID, CONTEMPORANEOUSLY WITH THE EXECUTION hereof, to the said Robert Hugh Armstreet and wife, Zellene Armstreet, by the said O. F. Adams, Sr., Mrs. O. F. Adams, Sr., and the estate of O. F. Adams, Jr., deceased.

NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that we, Robert Hugh Armstreet, and wife, Zellene Armstreet, and each of us, for and in consideration of the premises and the payment to us of the sum of SEVEN THOUSAND, FIVE HUNDRED AND NO/100 ($7,500.00) receipt of which is hereby acknowledged and confessed, do hereby fully and finally release, acquit and forever discharge O. F. Adams, Sr., Mrs. O. F. Adams, Sr., and the estate of O. F. Adams, Jr., deceased, of and from any and all and causes of action, founded and unfounded, known and unknown, which we could or might assert, and from any and all liability whatever, of every kind and character, if any, (including but [sic] limited to, claims for personal injuries to Robert Hampton Armstreet which might have survived to the parties hereto, damages for the wrongful death, if any, of the said Robert Hampton Armstreet, and any and all property damage) arising out of or having to do with the above described collision which occurred on or about the 10th day of November, 1964.

Witness our hands this the _____ day of December, A.D., 1964.

Robert Hugh Armstreet<br>Zellene Armstreet

(Standard form Joint Acknowledgement)

tion for summary judgment and the motion was also supported by an affidavit made by appellees' attorney.

Appellants replied to appellees' motion for summary judgment, filing what was designated as their first supplemental petition and an affidavit made by appellant, Hugh Armstreet. Briefly, in his affidavit, Hugh Armstreet asserted that the release relied upon by appellees had been executed and delivered by appellants to a representative and agent of an insurance company representing Osborne Adams, Jr. and the latter's parents. According to the affidavit, such representative advised him that by signing such release he would not be giving up any cause of action he might have against the Greers and that the law was such that they would be able to sue the other parties, assuming they could establish actionable negligence and damages; that Hugh Armstreet and wife relied upon such representations and were induced by such representations to execute the release and had such representations not been made, no release would have been executed; that the Armstreets had not intended to release their cause of action against appellees; and that such release was procured by fraudulent representations and should be rescinded.

No exceptions were leveled by appellees to the supplemental petition or affidavit. Upon a hearing of appellees' motion for summary judgment, the District Court sustained it and rendered the judgment from which this appeal has been perfected.

Appellants bring forward six points of error, the first three of which assert that the summary judgment was improper because there were genuine issues of fact raised by the pleadings and affidavit as to (a) whether the parties to the release intended to preclude a suit against the non-settling tort-feasors; (b) whether the amount paid for the release was full or partial payment to appellants for their damages; and (c) whether the release was procured by fraud or over-reaching. The remaining points assert that, as a matter of law, the release did not preclude suit by the estate of Robert Hampton Armstreet, deceased, since the estate was not a party to the release; the release did not bar appellants from seeking punitive damages from appellees; and the pleadings of appellees did not permit the assertion of an affirmative defense based upon the execution of the release. In view of the disposition we make of the appeal, it is unnecessary to discuss or pass upon the last three points of error assigned.

If admissible, appellants, in their reply to the motion for summary judgment, undoubtedly raised issues of fact with respect to the validity of the release and its effect on their action against appellees. The duty of the court upon a hearing of a motion for summary judgment is to determine if there are any issues of fact to be tried and not to weigh the evidence or determine its credibility and thus try the case on the affidavits. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, (1952). It is well settled that on a motion for summary, judgment, under Rule 166–A, Texas Rules of Civil Procedure, the burden of proof is on the movant and all doubts as to the existence of a genuine issue of material fact are resolved against him. The evidence must be viewed in the light most favorable to the party opposing the motion. Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41, (S.Ct., Texas, 1965). It is further well settled that when the affidavits or other summary judgment evidence disclose facts which render the position of the movant untenable, summary judgment should be denied regardless of defects which may exist in the pleadings of the party against whom the judgment is sought. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233.

It is not difficult in this case to conclude that under the pleadings and affidavit the appellants clearly raised issues of fact as

to the parties' intentions with respect to the release and, if the evidence is admissible, the trial court erred in granting summary judgment. This brings us to the crucial question as to whether parol evidence under the record here is admissible to show that appellants, in executing the release in question, did not intend to release the appellees who had not participated in the settlement. It is our view that under the Texas decisions, such evidence is admissible and the trial court erred in sustaining appellees' motion for summary judgment.

It is the general rule followed by numerous Texas decisions that a valid release of one or more joint tort-feasors by an injured party will release all other tort-feasors contributing to the wrong, unless the language of the release indicates an intention of the parties that the non-settling parties are not discharged. Riley v. Industrial Finance Service Company, 157 Tex. 306, 302 S.W.2d 652 (1957); City of Coleman v. Kenley, 168 S.W.2d 926, (Tex.Civ.App., 1943, ref., w. o. m.). The matter of release, of course, is a matter of intention and generally, in the absence of fraud, accident, or mutual mistake, parol evidence is inadmissible to contradict the terms of a written instrument that on its face is complete and unambiguous. Rapid Transit Ry. Co. v. Smith, 98 Tex. 553, 86 S.W. 322, (1905). In some instances, however, where the release is silent on a controverted point, parol evidence may be offered to supply its imperfections or supply those things about which it makes no declaration. Fort Worth & Denver City Ry. Co. v. Larson, 169 S.W.2d 260, (Tex. Civ.App., 1943, ref., w. o. m.) and Ditto v. Piper, 244 S.W.2d 547, (Tex.Civ.App., 1951, ref., n. r. e.).

It is apparent that the release in question is silent as to the appellants' intentions with reference to releasing appellees. Appellees were neither expressly included within the release, nor were they excluded therefrom. Further, nothing contained in the release indicates whether the parties intended the recited consideration to be a partial or full satisfaction of all of appellants' damages and claims. Aside from the contentions of appellants that the extrinsic evidence as to the parties' intentions was admissible in view of the allegations of fraud and misrepresentation, we believe that the Texas decisions have relaxed the parol evidence rule in cases such as this to permit proof that a release of one joint tort-feasor was not intended to release another. Eckel v. First Nat. Bank of Fort Worth, 165 S.W.2d 776, (Tex.Civ.App., 1942, err. ref.); Pearce v. Hallum, 30 S. W.2d 399, (Tex.Civ.App., 1930, err. ref.); and El Paso & S. R. Co. v. Darr, 93 S.W. 166, (Tex.Civ.App., 1906, err. ref.).

In the Eckel case, cited above, Eckel was injured in an explosion which was alleged to have been jointly caused by two defendants, Weir and Lone Star Gas Company. Upon a trial of the case, Eckel obtained a judgment in the amount of $15,000.00 against both defendants, jointly and severally. The gas company appealed and the case, as to it, was reversed and remanded for a new trial, leaving undisturbed the judgment against Weir. Thereafter, Eckel entered into a compromise settlement with the gas company, executing a written release, under the terms of which he was paid the total sum of $3,200.00. Subsequently, the cause of action as to the gas company was dismissed. Eckel then sued out a writ of garnishment against the First National Bank of Fort Worth, seeking to satisfy the judgment against Weir by a claimed indebtedness owing by the bank to Weir, contending that the judgment against Weir was valid and subsisting. Weir intervened upon the ground that the claim against him had been discharged and released as a result of the compromise settlement between Eckel and the gas company. The court permitted oral testimony from Eckel that, in executing the compromise settlement agreement, he did not intend to release Weir. However, the court found that regardless of the oral testimony, the release, as worded, constituted a release

of the entire cause of action and all claims of any kind and character and therefore constituted a release as to both defendants. The Court of Civil Appeals reversed and remanded the cause, holding that the parol evidence was admissible to show that the parties did not intend to release those not participating in the settlement. While the Court recognized that there were some Texas decisions holding that in order to preserve the action against non-settling parties, the release itself must show a reservation of rights against those not expressly released, (citing Elston v. City of Panhandle, 121 Tex. 553, 50 S.W.2d 1090, and Pennington v. Bevering, Tex.Com.App., 17 S.W.2d 772) it declined to follow the cited decisions and stated:

"However, it was specifically held by this court in Pennington v. Bevering, Tex.Civ.App., 9 S.W.2d 401, and by the Dallas Court of Civil Appeals in Pearce v. Hallum, 30 S.W.2d 399, that parol evidence is admissible to show that the parties did not intend to release those not participating in the settlement. Writs of error were refused by the Supreme Court in both cases. * * *

"We conclude that our Supreme Court, by refusing writs of error in the two cases just cited, has established the rule which should be followed in Texas."

In Pearce v. Hallum, supra, the plaintiffs, V. F. Hallum and wife, sued Pearce to recover damages for fatal injuries received by their six-year old son when the Pearce vehicle in which he was riding collided with a fire truck operated by the City of Dallas. Plaintiffs entered into a general release with the City of Dallas, the release reciting that it was the desire of the City to defray the funeral expenses incurred by the Hallums as a result of said accident and, in consideration of the payment of $465.50, plaintiffs released the City of Dallas "from any and all liability in connection with said accident." When Pearce was sued, he pleaded the above described release as a bar to action against him as a joint tort-feasor. The action of the trial court in excluding the release and voucher issued in payment therefor, on the grounds that the City of Dallas was not a joint tort-feasor, was reversed by the Court of Civil Appeals which held that the city was a joint tort-feasor and that whether the settlement described in the release was a full or partial settlement was a question of fact to be determined by the trier of facts. The court held that the intention of the parties in this situation could be shown by parol evidence, and cited the policy of the law which looks with favor on compromises. The court stated that if an injured party could not accept a partial reparation for an injury from one jointly liable to him without releasing other joint tort-feasors, the policy of the law would be defeated. The court further stated that in this jurisdiction the rule was definitely settled where an injured party makes a settlement with one jointly liable for an injury, it is always an open question whether the same was intended to be in full or only partial settlement. If it is intended in full settlement, all joint tort-feasors would be discharged thereby. We can see no material distinction between the holding in the Pearce case and the case now before us.

In El Paso & S. R. Co. v. Darr, supra, plaintiff, a car inspector in the employ of the railroad company, was injured on a transfer track used jointly by his employer and the El Paso & S. R. Co. He accepted $500.00 from his employer and gave a general release therefor. Although the release contained words which expressly reserved plaintiff's cause of action against any other company, growing out of the accident, the court held that parol evidence as to the intention of the parties to the release was clearly admissible.

██ Admittedly, there are decisions in this jurisdiction wherein contrary results have been reached on questions similar to the one now before this court. Appellees rely principally upon Burge v. Fleming, 261 S.W.2d 215, (Tex.Civ.App., 1953, no writ);

Hunt v. Ziegler, 271 S.W. 936, (Tex.Civ. App., 1925, aff., 280 S.W. 546); and Elston v. City of Panhandle, 121 Tex. 553, 50 S.W. 2d 1090, (1932). Assuming there are conflicts between the cases last cited and our decision here, we nevertheless, believe that the true rule deducible from the many Texas decisions is that, even in the absence of fraud, accident or mutual mistake, if a release is silent as to the parties' intentions with reference to releasing the nonsettling tort-feasors, parol or extrinsic evidence is admissible to show the true intent of the parties. We have noted that both parties have cited the case of Cannon v. Pearson, 383 S.W.2d 565, (Texas S.Ct., 1964). While the question decided therein is not the same as that before us, the court in the Cannon case, by way of dictum, in discussing the parol evidence rule, appears to recognize that in Texas the rule will be relaxed to permit proof that a release of one joint tort-feasor is not intended to release another, citing Eckel v. First Nat. Bank of Fort Worth and Pearce v. Hallum, supra.

Indisputably, under proper allegations of fraud, accident or mutual mistake, parol or extrinsic evidence is admissible to establish the true intent of the parties regardless of the wording of the release. It follows, therefore, that summary judgment should not have been granted under the record in this case because parol or extrinsic evidence is admissible to establish the true intent of appellants, Robert Hugh Armstreet and wife, Zellene Armstreet, in executing the release. J. Rosenbaum Grain Co. v. Mitchell, (Tex.Civ.App.) 142 S.W. 121, err. ref., 105 Tex. 160, 145 S.W. 1188. Furthermore, this result should be reached for the additional reason that all doubts as to the existence of a genuine issue of fact upon a motion for summary judgment should be resolved in favor of the parties against whom the judgment is sought.

The judgment of the trial court is reversed and this cause is remanded to the trial court for trial.