Rebecca PAGE et vir, Appellants,

v.

Marsha BALDON et vir, Appellees.

No. 17233.

Court of Civil Appeals of Texas.

Dallas.

Feb. 7, 1969.

Rehearing Denied Feb. 14, 1969.

**626**

William Carl Block and May, Troy & Reagor, Dallas, for appellants.

Robert Keith Drummond and Royal H. Brin, Jr., of Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellees.

BATEMAN, Justice.

The appellants Rebecca Page and her husband, as plaintiffs, sought damages for her personal injuries received in a motor vehicle collision. The trial court granted appellees' motion for summary judgment based on the defense of release and accord and satisfaction. The only question on this appeal is the existence *vel non* of a fact issue as to whether the release, admittedly signed by appellants, was induced by fraud.

 By filing their motion for summary judgment the appellees assumed the

burden of establishing the absence of any genuine issue as to any material fact pertinent to the case, and that they were entitled to judgment as a matter of law. Rule 166–A, Vernon's Texas Rules of Civil Procedure. In determining whether they have carried this burden, we must resolve all doubts as to the existence of such an issue of fact against appellees, viewing the evidence in the light most favorable to the appellants, disregarding any conflicts in the evidence and accepting as true the evidence which tends to support the position of appellants. Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41, 47 (Tex.1965), and the cases cited therein.

The defense of accord and satisfaction is based upon appellants' endorsement and cashing of a draft on Allstate Insurance Company payable to their order for $135.-62, on the reverse side of which and above the endorsements were these printed words:

"Endorsement hereof acknowledges that this payment is offered and received in full satisfaction of the claim shown on the other side; and that upon acceptance and payment of this draft the Allstate Insurance Company is hereby released and discharged of said claim."

On the face of the draft is this statement:

"IN FULL SETTLEMENT OF any and all claims arising out of accident on or about 2/20/67 near Dallas, Texas."

The trial court also had before it the oral depositions and affidavits of appellants.

Rebecca Page testified that she was born August 6, 1920. The extent of her formal education was fifth grade, elementary school, but she can read and write. She was employed as a maid at $50 per week. She was injured when her husband's truck collided with an automobile driven by the appellee Mrs. Baldon on February 20, 1967. The Baldon car was insured by Allstate Insurance Company. A day or two after the collision Mrs. Page went to the Allstate office and talked to a man with that company. He asked her if she was hurt and she replied, "Oh, my leg hurts a little bit, but I think it will be all right." He then said, "Well, it's not hurt too bad," and she replied, "No, I don't think it is; it's swollen a little bit." The man then looked at the truck and told her to take the truck to two different places for estimates on the cost of repairing it. Her husband obtained the estimates and had the truck repaired at a cost of $135. The Allstate man also said to her, "You think you going to be all right?" And she replied, "Well, I hope so." After that they received the check for about $135, the same amount as the estimate that had been made. She just looked at the front of the check to see how much it was. She looked at the back of the check where she signed it but didn't read anything on it and never did talk to anyone else from Allstate. Her husband talked to the same man at Allstate to whom she had talked. She also testified concerning the conversation she had with the Allstate man as follows:

"When I went in and he was talking about the accident and the truck and he looked at it and I told him about my knee, he said, 'Well, do you think it—' I said 'Yes, it's going to be all right.' He said, 'Well, we will go on and get the truck fixed so your truck won't be laid up and we will talk about it later,' said, 'We will get the property damages cleared all up out of the way and,' says, 'We will see how you come along.' I said, 'All right.' "

She said she relied on the man's statement and would not have endorsed the check had she thought she was releasing any rights she might have had insofar as personal injuries were concerned. She said that when the truck was repaired she and her husband cashed the check and gave the proceeds thereof to the man who repaired the truck.

Rebecca Page also testified that she went out to see the man at Allstate twice, and when asked to tell everything that was said between her and the man the first time she said,

"He looked at the truck and told me to go and have it estimated and I told him about my knee and he said, 'You think it's going to be all right?' I said, 'Oh, yeah, I think it's going to be all right. It's just hurting and swollen a little bit, but I believe it's going to be all right.' He said, 'Well, the main thing is we will get this truck all back in shape so your husband can continue to work in it.' And I said, 'All right.' * * * That was the second time I went out there and he told me that he would take care of the truck and he hoped my knee would be all right and I said, 'I hope so, too.' "

When asked what was said the second time she said:

"I showed him the worksheet and he says, 'Oh, they are way off.' And I didn't say nothing then, but just sit there and look at him. Then he says, 'Well, we are going to take care of this,' which was the truck; he said, 'We are going to take care of your truck.' I said, 'All right, Sir.' He said, 'Well, how is your leg?' I said, 'Oh, it's doing pretty good; it's just swollen a little bit.' And that was it, that's all we said. He said he would get in touch with my husband."

The appellant Robert E. Page, when asked if he ever talked to the Allstate man relative to his wife's injury, said:

"He told me, them fellow down here told me, he said, 'I'll pay you for the property damage.' He didn't say he would give me a check. He said, 'I'll pay you for your property damage and we'll talk about that later, but the main thing is getting your truck back on the road.' I said, 'Because I need my truck to make a living with.' "

When asked what the man told him he would talk to him later about, Page said:

"And so he said, 'We will take care of your property damage now and if anything else come up,' said, 'we will talk about that later.' And he had a white

sheet, but I wouldn't sign nothing. I didn't put my name on anything. And he mailed the check out to me."

He said that the man gave him the impression that he would have his truck fixed so he could get back on the job with it; that he told him about his wife's leg, but that she thought it was going to be all right, whereupon the Allstate man said, "Well, this takes care of your property damage here." When asked if he looked at the check when he received it, he said, "I looked and seen how much it was made out for." He further said that the amount of the check was just enough to fix the truck. Page further testified that he had only four years of education, but could read and write. He was born January 12, 1918.

Appellants said in their affidavits that in endorsing and cashing the check or draft in question they relied on representations of a claims representative of Allstate Insurance Company that it was only reimbursement for the damages to their truck and in no way pertained to any claim Rebecca Page might have for personal injuries and that any such claim would be adjusted at a later date.

■ Taking this evidence at face value, as we must in deciding whether the summary judgment was correct, we conclude that it was sufficient to require the submission to a jury of the question of whether appellants were induced by fraud to endorse and cash the draft.

This question of whether a court may relieve a party from the burdens of a written contract procured by fraud has been before the appellate courts of Texas many times, and the decisions have not always been harmonious. As said in Dallas Farm Machinery Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233, 234 (1957):

"A review of the Texas cases on the question reveals conflicting decisions and indicates a resulting confusion which can hardly be resolved or explained away with nice distinctions."

Without attempting to review all of the Texas cases on the question, we have concluded that the following are correct rules of law applicable to the facts appearing in the record now before us:

1. A release, like any other contract, may be avoided if induced by fraud or misrepresentations. 50 Tex.Jur.2d, Release, § 41, p. 58; Associated Employers Lloyds v. Aiken, 201 S.W.2d 856 (Tex.Civ.App., Dallas 1947, writ ref'd n. r. e.); Texas & N. O. Ry. Co. v. Thompson, 12 S.W.2d 963 (Tex.Comm'n App.1929, jdgmt adopted).

2. One who seeks to avoid a release procured from him by fraud or misrepresentations may be successful even though it be shown: (a) that he might have known the truth about the contents of the release by proper inquiry, Texas & N. O. R. Co. v. Goodwin, 40 S.W.2d 182, 185 (Tex.Civ. App., Beaumont 1931, writ ref'd); or (b) that in fact he did know the contents, terms and conditions of the release at the time he executed and delivered it, Texas & N. O. Ry. Co. v. Thompson, supra; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S.W. 873 (1921); and (c) that the release itself recites that no representations induced its making, Texas & P. Ry. Co. v. Presley, 137 Tex. 232, 152 S.W.2d 1105 (1941); Dallas Farm Machinery Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233.

3. The parol evidence rule prohibits the use of parol evidence to vary, enlarge or contradict the terms of a valid written contract, but it does not stand in the way of extrinsic proof of fraud which would vitiate the contract. Edward Thompson Co. v. Sawyers, supra; Dallas Farm Machinery Co. v. Reaves, supra; Bankers' Trust Co. v. Calhoun, 209 S.W. 826, 829 (Tex.Civ.App., Dallas 1919, writ ref'd); McCormick and Ray, Texas Law of Evidence, 2d Ed., Vol. 2, § 1661, p. 513; Inman v. Parr, 311 S.W.2d 658, 709 (Tex.Civ. App., Beaumont 1958, writ ref'd n. r. e.).

4. The general rule, that fraud cannot be predicated upon misrepresentations as to matters of law, is subject to the exception that relief may be granted on account thereof when there is a relation of trust and confidence between the parties. Safety Casualty Co. v. McGee, 133 Tex. 233, 127 S.W.2d 176, 121 A.L.R. 1263 (1939).

An application of these principles brings us to the inescapable conclusion that appellees failed to discharge their twofold burden of showing (1) the absence of any genuine issue as to a material fact and (2) that as a matter of law they were entitled to judgment. In reaching this conclusion we rely, in addition to the cases cited above, on Rapid Transit Ry. Co. v. Smith, 98 Tex. 553, 86 S.W. 322 (1905); Conn v. Hagan, 93 Tex. 334, 55 S.W. 323 (1900); National Security Life & Cas. Co. v. Benham, 233 S.W.2d 334 (Tex.Civ.App., Amarillo 1950, writ ref'd n. r. e.); American Casualty & Life Co. v. Hale, 198 S.W.2d 759 (Tex.Civ. App., Beaumont 1946, no writ); Southwestern Greyhound Lines v. Buchanan, 126 F.2d 179 (5th Cir. 1942); and Western Casualty Co. v. Shepard, 295 S.W. 1105 (Tex. Civ.App., Beaumont 1927, writ ref'd).

Appellees rely on our decision in Rough v. Southwestern Bell Telephone Co., 426 S.W.2d 579 (Tex.Civ.App., Dallas 1968, writ ref'd), but in that case we made it quite clear that there was no evidence of any fraud inducing the release given, and that the plaintiff relied on what his own attorney told him about it, not on anything said by anyone representing the defendant.

In any event, the facts disclosed by the evidence in this record are such as to create at least a doubt in our minds as to the correctness of the summary disposition of the case by the trial court. Resolving this doubt "in favor of the parties against whom the judgment is sought," Armstreet v. Greer, 411 S.W.2d 403, 409 (Tex.Civ. App., Tyler 1967, writ ref'd n. r. e.), we hold that the summary judgment was improper.

The summary judgment is reversed and the cause remanded for trial.