Adele **LITTLE**, Appellant,

v.

L. W. **BUCKLEY**, Appellee.

No. 17258.

Court of Civil Appeals of Texas.

Dallas.

April 18, 1969.

Donald D. Koons, of O'Donnell, Koons & Street, Dallas, for appellant.

James T. Berry of Reppeto, Berryman & Berry, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

This appeal is from a take nothing summary judgment which denied appellant recovery of commissions allegedly due upon an oral contract. In her petition Adele Little alleged that she was a duly licensed realtor; that she maintained an office as a real estate broker and had several associates working with her, including Katherine Hughes. She alleged that L. W. Buckley was engaged in the business of constructing homes in the Dallas area and that Buckley had requested her to secure a purchaser for a home which he had constructed at 4007 Miramar in the City of Dallas. That pursuant to Buckley's request she, and her associate, Mrs. Hughes, showed the property and did secure a prospective purchaser for the property, Mr. and Mrs. Clint Josey, Jr. That upon being advised that the property located at 4007 Miramar had been sold several days previously Buckley advised Mrs. Hughes that if the Joseys desired to do so he would construct them a similar house on a lot of their choosing. Thereupon Mrs. Hughes induced the Joseys to enter into a contract with Buckley for the purposes of constructing a house on another lot purchased by the Joseys at 4008 Miramar. Appellant alleged that it was orally agreed between Mrs. Hughes and Buckley that for and in consideration of her efforts in securing the contract between Buckley and the Joseys that Mrs. Little would receive a commission upon the purchase price of the home, such percentage to be arrived at between Mrs. Little and Buckley directly. She alleged that Buckley built the house for which he received $83,500 and that because her associate performed services generally performed by persons engaged in the same or similar business, and because of the oral contract between Mrs. Little and Buckley she would be entitled to receive the amount of $5,010 commission. In the alternative,

Mrs. Little sought recovery of reasonable compensation for services rendered on the basis of *quantum meruit.*

Buckley answered with a general denial, a special denial that any agreement was made, and that if there was an agreement there was no consideration or that the consideration had failed.

Appellee filed his motion for summary judgment, supported by a portion of the deposition of Mrs. Little. Responding to this motion Mrs. Little filed a sworn controverting answer and attached thereto an affidavit of Mrs. Hughes and also an affidavit of a realtor, Mr. Porter. The complete deposition of Mrs. Little was considered by the court and ordered sent to this court as a part of the record for review. The trial court sustained the motion for summary judgment and rendered judgment denying any recovery against appellee. Mrs. Little appeals.

## SUMMARY JUDGMENT EVIDENCE

The summary judgment evidence, presented most favorably in the light of the contention of appellant, as we are required to do, may be summarized as follows:

Katherine Hughes, in her affidavit, said that she was a duly licensed realtor "doing business as an associate and agent of Adele Little." That during the year 1966 the office of Adele Little and Mrs. Hughes was contacted by Mr. L. W. Buckley relative to acquiring a purchaser for a home which he had constructed at "4005 Miramar". That the office of Adele Little sought to aquire a prospective purchaser and that she, as agent and associate of Mrs. Little, expended approximately six months in locating a prospect, Mr. and Mrs. Clint Josey, Jr., who were willing to purchase the property. That they were advised that the property at "4005 Miramar" had been sold the previous day. She said:

"That thereafter, as an alternative to the selling of the property at 4005 Miramar, Katherine Hughes requested L. W. Buckley to construct a similar home for the Joseys on a lot of their choice, which L. W. Buckley agreed to do. Upon the securing of this agreement in behalf of L. W. Buckley, and in consideration of the introduction of the Joseys to L. W. Buckley * * *, and the agreement between L. W. Buckley and the Joseys to build, the said L. W. Buckley agreed to pay the usual and customary commissions for such charges in the Dallas area which your Affiant knew would not be less than 6 percent."

She further said that the Joseys then acquired a lot of their choice at 4008 Miramar and that Buckley proceeded to erect a house thereupon and was paid the sum of $83,500 by the Joseys. She said:

"That at various times during the negotiations and the bringing together of the seller and purchaser enabled L. W. Buckley to sell the second house and after numerous discussions over commissions, it was understood by both parties a commission was to be paid and further there was no written contract between Mr. L. W. Buckley and Mrs. Adele Little because it is usual and customery for Realtors to deal with builders on parole (*sic*) agreements."

Rufus Porter, a licensed real estate broker in the City of Dallas, said in his affidavit that, based upon twenty-three years' experience in the real estate business in Dallas, that he was personally acquainted with the usual and customary practices existing in Dallas during 1967 between home builders and realtors; that it is the usual and customery practice that agreements relative to the listing for sale of property between such parties be in the nature of parol agreements; that it is the usual and customary procedure between realtors and home builders that when a realtor secures and actually furnishes a prospective purchaser of a home or structure to be built upon the lot of the purchaser's choice, that the realtor would customarily expect to receive a commission for acquiring the

prospect who ultimately enters into a contract with the builder to erect a structure.

Appellant, Adele Little, testified in her deposition that she has been a licensed real estate broker for approximately eight years and that she operates her place of business in Dallas which is solely owned by her. She said that she had "associates" who worked under her direction and that she was responsible for their acts. One of her "associates" or "representatives" or "agents" was Mrs. Katherine Hughes. She referred to Mrs. Hughes throughout her deposition as her "representative" or "associate" or "agent". She said that Mrs. Hughes first contacted Mr. and Mrs. Clint Josey, Jr. in the early part of 1966 for the purpose of helping them find a home. She said that she personally had several dealings with the Joseys but most of the transactions were handled by Mrs. Hughes who was the "agent who was showing the property." She said that she had known Mr. Buckley ever since she had been in the real estate business. In describing what happened leading up to the Buckley-Josey deal, she said that her agent, Mrs. Hughes, had showed the Buckley house across the street from the lot that they eventually bought but that before the Joseys could buy it the house had been sold to someone else. Immediately Mrs. Hughes tried to get the Joseys to build upon another lot and they finally decided upon one at 4008 Miramar. She said that all during this time "we were in communication with Mr. Buckley." Mrs. Hughes persuaded the Joseys to buy the lot and have the existing house torn down and also to have Mr. Buckley to build them a new one. She emphasized that the preliminary negotiations were carried on by Mrs. Hughes, the Joseys and Mr. Buckley. When asked when was the first time she had any direct communication with Mr. Buckley or the Joseys concerning the purchase of the property at 4008 Miramar she said:

"The first time that Mr. Buckley and I had any discussions was after many discussions between Mrs. Hughes and Mr. Buckley concerning whether this would be a three or six per cent commission. So the only time I had any discussion with Mr. Buckley was when Mr. Buckley and I were resolving that it would be six and not three."

She said that Mr. Buckley came to her office and it was there that "we agreed on the six per cent." At that time the Joseys had already purchased the lot at 4008 Miramar but Mr. Buckley had not signed the contract with the Joseys to erect the new house. She said that Mrs. Hughes had sold the Joseys on the idea of Mr. Buckley building their new house and that they did not know Mr. Buckley until she introduced them. She said:

"There was never any question in our mind about Mr. Buckley and the commission until Mr. Buckley brought it up, but there was only one person who Mrs. Hughes was trying to sell, and it was Mr. Josey, and her entire efforts were spent to this; number one, to sell them on the idea of building a house about which Mr. Josey had been allergic; and since they liked the house of Mr. Buckley, that he should certainly be the contractor they use."

Mr. Buckley raised the question about commission, and said that he thought Mrs. Little should only get three per cent. Mrs. Hughes and Mrs. Little were contending for the usual six per cent. Mr. Buckley contacted Mrs. Little before he drew the contract with the Joseys and asked Mrs. Little to go over to the Joseys and discuss with them the fact that the six per cent commission would be added. Mrs. Little refused to do so but said to him: "Let us go over to the Joseys and write the contract, discuss your profit and my commission." Mr. Buckley would not do this and it was agreed that he would draw the contract and add the six per cent commission due Mrs. Little. She quoted Mr. Buckley as saying, "You trust me * * *. It's a gentleman's agreement that I will

pay you six per cent and I will write the contract when I get the figures." Later Mr. Buckley refused to pay the six per cent and when she asked him what amount he had in mind he said "Seven hundred dollars."

Mrs. Little testified:

"Q What did you personally do to earn this five thousand dollars that you claim you're entitled to?

A Me, personally?

Q Yes.

A I—my agent introduced the client and sold the job.

Q In other words, whatever services were performed in return for this alleged five. thousand dollars, they were performed by Mrs. Hughes, is that correct?

A Yes, right. She was the selling agent."

She testified that Mr. Buckley told her that the six per cent commission would be payable at the time of closing. She agreed for him to prepare the contract because she trusted him. She testified that it was the custom of the real estate trade that whenever a realtor brings a builder and prospective purchaser together that the real estate agent is entitled to six per cent commission from the builder.

## OPINION

Appellant assails the judgment in two points of error contending (1) that the summary judgment evidence discloses the existence of an issue of fact concerning the alleged parol contract between Mrs. Little and Buckley; and (2) that the record reveals an issue of fact to support appellant's alternative plea based upon the equitable doctrine of *quantum meruit*. Having carefully examined this record in the light of the well established rules of judicial review of summary judgments we sustain both of appellant's points and reverse the judgment.

■ Only recently this court has had occasion to reannounce the rule that when a party elects to file a motion for summary judgment pursuant to Rule 166–A, Vernon's Texas Rules of Civil Procedure, it assumes an extraordinary burden. It must show by competent summary judgment evidence that there was no genuine issue as to any material fact pertinent to the cause of action and that it was entitled to the judgment prayed for as a matter of law. Risinger v. Fidelity & Deposit Co. of Maryland, 437 S.W.2d 294 (Tex.Civ.App., Dallas 1969); Plantation Foods, Inc. v. City of Dallas, 437 S.W.2d 396 (Tex.Civ.App., Dallas 1969); Johnson v. Floyd West & Co., 437 S.W.2d 298 (Tex.Civ.App., Dallas 1969); and Page v. Baldon, 437 S.W.2d 625 (Tex.Civ.App., Dallas 1969).

■ Judicial resolution of the question of whether the moving party has discharged its burden thus imposed by law requires the application of landmark rules promulgated by our Supreme Court and itemized by us in Johnson v. Floyd West & Co., supra. These rules enjoin us to determine if there are issues of fact to be tried and not to weigh the evidence or determine the credibility of the witnesses and thus try the case on the affidavits and depositions. We must also view the evidence in a light most favorable to the party opposing the motion and if there are any doubts as to the existence of a genuine issue such must be resolved against the party making the motion. All conflicts in the evidence are disregarded and all evidence which tends to support the position of the party opposing the motion is accepted as true. Evidence which favors the moving party's position is not considered unless it is uncontradicted and if such uncontradicted evidence is from an interested witness it cannot be considered as doing more than raising an issue of fact unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony.

■ When we perform a critical analysis of the summary judgment evidence, sum-

marized above, in the light of these rules it becomes quite apparent that appellee Buckley has failed to carry his burden of establishing the nonexistence of issuable facts and of demonstrating that he is entitled to the judgment, as a matter of law. The record falls short of constituting clear and satisfactory proof that no agreement existed between Mrs. Little's office and Buckley. Appellee places great stress upon certain portions of Mrs. Little's testimony as given in her deposition but when the entire deposition is reviewed we are confronted with conflicts which must be resolved by a trier of fact. Thus in one instance Mrs. Little apparently testifies that her personal agreement with Buckley for the six per cent commission came into being after the agreement between Buckley and the Joseys. So appellee argues that there is an entire absence of consideration. However, in the same deposition Mrs. Little testifies that the agreement whereby Buckley either expressly or impliedly promised to pay commission was made during numerous discussions between Buckley and Mrs. Hughes, Mrs. Little's agent or representative. The record, in this state, creates a doubt or uncertainty which must be resolved against Buckley.

■ Appellee concedes in his brief that there is some evidence to support appellant's contention concerning the agreement between Buckley and "Little's agent". However, he argues that such contention of agency is at variance with the pleadings. While there may be some question concerning the sufficiency of appellant's pleadings in this connection, yet our Supreme Court has held that when the affidavits or other summary judgment evidence disclose facts which render the position of the moving party untenable summary judgment should be denied regardless of defects which may exist in the pleadings of the opposite party. Womack v. Allstate Ins. Co., 156 Tex. 467, 296 S.W.2d 233 (1956). See also Gonzales v. Texas Employers' Ins. Ass'n, 408 S.W.2d 521 (Tex.Civ.App., Eastland 1966, writ ref'd n.r.e.).

Aside from the question of express oral agreement to pay commission we think that the record is sufficient to create an issue of fact on the theory of *quantum meruit*. The affidavit of Porter, the affidavit of Mrs. Hughes, as well as the deposition testimony of Mrs. Little, all support this theory of recovery.

Appellant's points of error are sustained and the judgment of the trial court is reversed and remanded.