**Lucien J. HARMON and Bernice F. Harmon, Plaintiffs-Appellees, Cross-Appellants,**

v.

**GRANDE TIRE CO., INC., et al., Defendants,**

**Central Bag Company, et al., Defendants-Appellants, Cross-Appellees.**

No. 86–1238.

United States Court of Appeals, Fifth Circuit.

July 13, 1987.

Rehearing Denied Aug. 12, 1987.

---

Ellen A. Presby, D. Bradley Dickinson, Jeffrey S. Lynch, Vial, Hamilton, Koch & Knox, Dallas, Tex., for defendants-appellants, cross-appellees.

Paul W. Brown, Brown & Associates, Dallas, Tex., for plaintiffs-appellees, cross-appellants.

Before GEE, REAVLEY and JONES, Circuit Judges.

PER CURIAM:

Lucien and Bernice Harmon filed this negligence action seeking damages under Texas law for injuries arising from Mr. Harmon's automobile accident. Both sides appeal the judgment awarding damages against Central Bag Company.[1] We eliminate that portion of the judgment awarding mental anguish damages to Mrs. Harmon and affirm.

## I

In June 1982, Mr. Harmon was struck by an oncoming truck as he attempted to make a left turn at an uncontrolled intersection on an Oklahoma highway. That truck was owned by Grande Tire Company and driven by Joel McCaffrey. Shortly before the collision, a second truck, owned by appellant Central Bag Company, had attempted to make the same left turn, but had stalled in the median area between the two directions of traffic. The truck had run out of fuel and the driver, William Goodall, had hoped to make the left turn into a service station. When the truck stalled, Goodall turned on his emergency flashers, got out of the truck, and went to the service station to obtain some fuel. He did not set out any warning devices around his truck.

When Mr. Harmon approached the intersection, he pulled up behind the stalled Central Bag truck in such a manner that the truck obstructed his view of the oncoming traffic. He apparently stopped briefly, and then pulled out across the lanes of oncoming traffic, where he was struck by McCaffrey's truck. McCaffrey had seen the stalled Central Bag truck and slowed down briefly but resumed his normal speed when the truck did not appear to be moving. He did not see Mr. Harmon's car until it pulled out in front of him from behind the Central Bag truck. His attempts to brake and swerve out of the way were unavailing.

The Harmons sued the owners and drivers of both trucks. Prior to trial, they settled with McCaffrey and Grande Tire for $40,000. The case went to trial against Goodall and Central Bag, with McCaffrey's negligence also being submitted to the jury. The Harmons claimed that Goodall had been negligent in allowing his truck to run out of fuel and in failing to set out warning devices as required by state and federal regulation. They further claimed that Central Bag had failed to require Goodall's compliance with the federal regulations. The jury returned answers to special interrogatories apportioning the fault fifty percent to Mr. Harmon, forty percent to Goodall, and ten percent to Central Bag. The jury assigned no fault to McCaffrey. Damages were awarded for Mr. Harmon's medical expenses and lost earnings and for Mrs. Harmon's loss of consortium and mental anguish.

## II

Central Bag first argues that the district court should not have entered judgment on the jury's finding that Central Bag was ten percent at fault. This argument is based on a supposed inconsistency in the jury's answers to the special interrogatories. We agree with the district court that no irrec-

---

1. Mr. Harmon died of causes unrelated to the accident after suit was filed but before trial.

oncilable inconsistency existed and uphold the district court's determination that Central Bag was at fault.

Several of the interrogatories to the jury addressed the fault of the defendants. The only one of these—Question No. 3—directed to Central Bag asked whether the plaintiff had proved that Goodall and Central Bag failed to comply with section 392.22 of the Federal Motor Carrier Safety Regulations, 49 C.F.R. § 392.22 (1986), which, as the jury was instructed, requires a driver to place warning devices around his truck if it is stopped on the highway or the shoulder. The jury answered that Goodall had violated the regulation but that Central Bag had not. However, in response to a later interrogatory asking the jury to apportion fault among the defendants it had found negligent, the jury answered that Central Bag was ten percent at fault.

The district court resolved this apparent inconsistency by concluding that the jury's answer to Question No. 3 established only that Central Bag itself had not failed to place the warning devices around the truck, not that Central Bag was free from all fault. Based on this reading of Question No. 3, the court determined that no interrogatory addressed Central Bag's independent fault for failing—as required by 49 C.F.R. § 390.32 [2]—to require Goodall's compliance with section 392.22. Accordingly, the court invoked Federal Rule of Civil Procedure 49(a) and entered its own finding that Central Bag had violated section 390.-32 and that this was negligence that was a proximate cause of the accident.[3]

■ We find no error in the district court's action. When an issue raised by the evidence or pleadings is omitted from the special interrogatories and neither party objects, Rule 49(a) allows the district court to make its own finding regarding

that issue. In this case, the Harmons had presented evidence regarding Central Bag's compliance with section 390.32 and neither party objected to the absence of an interrogatory specifically addressing that section.

Central Bag asserts that the section 390.-32 issue was not omitted but was, in fact, included as part of Question No. 3. It relies on the fact that the final paragraph of the instructions accompanying Question No. 3 identified section 390.32 as requiring Central Bag to ensure Goodall's compliance with section 392.22. Its argument is that the only way, under the evidence presented at trial, Central Bag could have violated section 390.32 was through a violation of section 392.22. Thus, Central Bag contends, the jury must have realized from the instructions that, as to Central Bag, Question No. 3 was actually directed to section 390.32 and the jury's answer that Central Bag did not violate section 392.22 was implicitly a finding that it did not violate 390.32. Because this implicit finding irreconcilably conflicts with the jury's apportionment of fault, Central Bag concludes, the verdict must be overturned and a new trial held.

■ We decline to engage in such gymnastics to find an inconsistency in the jury's findings. Question No. 3 simply asked whether Central Bag had complied with section 392.22, which the accompanying instructions defined as requiring *the driver* of a stopped vehicle to place warning devices around it. The jury, quite reasonably we think, answered that Central Bag, the truck's *owner*, had not violated this section. We do not think it reasonable to assume the jury was so imaginative to conclude from an ambiguous reference at the end of a page of instructions that a question explicitly addressing only section 392.22 also actually inquired about any vio-

---

**2.** That section provides:

Whenever in [the regulations] a duty is prescribed for a driver or a prohibition is imposed upon him, it shall be the duty of the motor carrier to require observance of such prescription or prohibition; and, if the motor carrier is himself a driver, he shall likewise be bound thereby.

49 C.F.R. § 390.32 (1986).

**3.** Although Central Bag challenges the district court's ruling that the § 390.32 issue was omitted and further asserts that the court's finding that the section was violated was clearly erroneous, it does not contend that violation of § 390.32 is not a sufficient basis for imposing liability upon it.

lation of section 390.32. The reasonable conclusion is that the jury answered the question as it was asked and gave no more than background significance to section 390.32.

■■ Central Bag also contends the district court's factual findings of violation of the regulation and proximate cause were clearly erroneous. We disagree. Goodall testified that Central Bag had not given him any safety training in any form, other than posting a diagram at the Central Bag office of a truck with safety equipment around it. Central Bag did not present any evidence to rebut this testimony. Without elaborating on the measures that must be taken to comply with section 390.32, we conclude this evidence that Central Bag took no steps, beyond posting a diagram, to ensure that Goodall knew and followed applicable safety regulations is sufficient to support the district court's finding of a violation. We also conclude that sufficient evidence existed to support a finding that Central Bag's conduct was a proximate cause of the accident. Central Bag points to evidence that Goodall was already familiar with safety regulations and the requirement that he set out warning devices. It remains, however, that Goodall did not comply with these safety requirements, and the fact finder was free to conclude that Central Bag's failure to specifically reinforce Goodall's knowledge of those requirements contributed to Goodall's conduct.

### III

Appellants [4] next contend that the district court erred in denying them a continuance. A week before trial, appellants moved for a continuance on the ground that Goodall and J.W. O'Bryan, Central Bag's representative at trial, were unavailable for trial. The motion asserted that Goodall's house had recently been destroyed by fire and that Goodall was at that time on a truck haul that would keep him unavailable for the entire time of the scheduled trial. As to O'Bryan, the motion stated that he had recently undergone open heart surgery and would not be able to attend the trial. The district court denied the motion, but allowed appellants to take O'Bryan's deposition shortly before trial. Apparently because of their opportunity to depose O'Bryan and present his testimony at trial, appellants do not argue any prejudice from O'Bryan's actual absence from the courtroom. Appellants do contend, however, that Goodall's absence was critical.

■■ We find no error in the district court's action. "The grant or denial of a continuance is within the sound discretion of the trial judge." *Harvey v. Andrist,* 754 F.2d 569, 572 (5th Cir.), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985). Goodall's deposition had been taken approximately eighteen months prior to trial and Goodall testified extensively at that time as to all the circumstances surrounding the accident and his knowledge regarding the safety regulations at issue in the case. Much of this testimony, which was presented at trial, was favorable to the defendants. Moreover, appellants were free to present testimony from other representatives of Central Bag as to Central Bag's efforts to properly train Goodall. The district court also had evidence before it suggesting that appellants had lost contact with Goodall and that it might be some time before they would be able to produce Goodall for trial. Two previous trial dates had been lost at the defendants' request, and the district court was concerned that another continuance would significantly delay an already overdue trial. Although the unavailability for trial of a party or other key witness ordinarily will persuade a judge to grant a continuance, under the circumstances of this case the district court's action was not abuse of discretion.

### IV

Appellants next argue that the district court erred in submitting McCaffrey's neg-

---

**4.** The remaining points, unlike the first, are raised by both Goodall and Central Bag, to whom we shall refer as appellants.

ligence to the jury at the request of the Harmons when appellants made clear—prior to the case's submission to the jury—their desire to take a dollar credit for McCaffrey's $40,000 settlement with the Harmons. Appellants acknowledge that under Texas law once the settling defendant's negligence has been submitted to and determined by the jury, the nonsettling defendant is entitled only to a reduction of its damages by the portion of the negligence attributed to the settling defendant. Tex. Civ.Prac. & Rem.Code Ann. § 33.015 (Vernon's 1986) (formerly Tex.Rev.Civ.Stat. Ann. § 2212a(e)); *Cypress Creek Utility Service Co. v. Muller*, 640 S.W.2d 860, 864 (Tex.1982). The jury found that McCaffrey had not been negligent and thus appellants did not benefit from any proportional reduction. Appellants argue that they should nonetheless be given a dollar credit because of their announced election prior to submission of the case to take that credit.

■ Appellant's argument is premised on their belief that a nonsettling defendant's request that the settling party's negligence not be submitted to the jury must be honored over the plaintiff's request to the contrary. Appellants' premise, however, was undercut by the Texas Supreme Court in *Cypress Creek*. The Court there expressly disapproved of a court of appeals decision that suggested the negligence of a

settling tortfeasor could not be submitted to the jury at the plaintiff's request. 640 S.W.2d at 866 (disapproving *Deal v. Madison*, 576 S.W.2d 409, 416 (Tex.App.—Dallas 1978, writ ref'd n.r.e.)). We take this as an authoritative interpretation of the statute against appellants' position.[5] Because the Harmons demanded that McCaffrey's negligence be submitted to the jury, the district court acted properly in so doing despite appellants' objection.[6]

## V

Appellants next challenge the award to Mrs. Harmon of damages for mental anguish. The special interrogatory addressed to Mrs. Harmon's damages asked the jury to determine what amount would compensate her for (1) the loss of her husband's companionship, and (2) emotional stress and anguish. The jury awarded $90,000 for loss of companionship and $90,000 for mental anguish.[7] Appellants contend the award for mental anguish damages is not justified under Texas law. We agree.

Although the whole of law relating to mental anguish damages is quite complex, the *Erie* question we face is relatively narrow: can a person recover for mental anguish arising from injuries negligently inflicted upon her spouse when she did not witness the accident,[8] her spouse did not

5. *Merit Drilling Co. v. Honish*, 715 S.W.2d 87 (Tex.App.—Corpus Christi 1986, writ ref'd n.r. e.), relied on by appellants, is not to the contrary. The nonsettling defendant was allowed to take a dollar credit in that case, but there is no indication that the plaintiffs requested the settling party's negligence to be submitted to the jury.

6. Appellants do not specifically raise the question whether a settling tortfeasor's negligence may be submitted to the jury when, as in this case, that tortfeasor is not a party to the suit at the time the case is submitted to the jury. We note, however, despite language in the statute suggesting a tortfeasor must be joined before his negligence can be submitted, the Texas courts and commentators have argued formal joinder is unnecessary. *See Deal v. Madison*, 576 S.W.2d 409, 416–18 (Tex.App.—Dallas 1978, writ ref'd n.r.e.); Powers, Annual Survey of Texas Law: Personal Torts, 39 Sw.L.J. 93, 105 (1985); Keeton, Annual Survey of Texas Law: Torts, 28 Sw.L.J. 1, 14 (1974). Indeed, the Texas Su-

preme Court has specifically held joinder is not necessary to determine comparative causation in cases involving strictly liable defendants. *Acord v. General Motors Corp.*, 669 S.W.2d 111, 117 (Tex.1984). There does not appear to be any inherent difference in the actions to justify a different rule for pure negligence cases. *See* Note, 16 Tex.Tech.L.Rev. 559, 569–70 (1985).

7. As discussed in more detail below, the district court reduced this award by fifty percent on account of the jury's attribution of fifty percent comparative fault to Mr. Harmon.

8. Mrs. Harmon testified that she first learned of the accident by a telephone call from the hospital to her home in Dallas, Texas. She then contacted her son, who drove with her to Pauls Valley, Oklahoma, the city where the accident occurred. When they arrived at the hospital, they were told that Mr. Harmon had been moved to a hospital in Oklahoma City because of his head injury. After stopping by the scene of the accident and the local police station, they

die from the accident, and she has shown no physical manifestation of her mental anguish? Mrs. Harmon asserts this question should be answered affirmatively.[9] The prevailing rule requires proof of physical injury resulting from mental anguish, or a physical manifestation of mental anguish, prerequisite to the award of mental anguish damages. The Texas Supreme Court has recently held, however, that "proof of physical injury is no longer required in order to recover for negligent infliction of mental anguish." *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987), *reh'g denied*, 30 Tex.Sup.Ct.J. 479 (June 17, 1987). The plaintiffs in *Garrard* were parents of a stillborn child who alleged that the hospital had negligently delivered the body of the child to a mortuary, instead of performing an autopsy as the child's father had directed. The child's body was disposed of in a common, unmarked grave without the parents' knowledge or consent. The Texas Supreme Court held that these allegations stated a cause of action, even though the parents did not allege any physical injury or physical manifestation of their mental anguish and even though no claim was made under the wrongful death statute. Our decision in the present appeal turns on our view of the effect of this *Garrard* case on the Texas law.

While the majority opinion in *Garrard* is broadly written, we read it as being directed only to the matter of proof. The traditional tort concepts have not been eliminated, and the Texas plaintiff continues to bear the burden to prove foreseeability as an element of proximate cause. No Texas case establishes the initial right of Mrs. Harmon to recover mental anguish damages, entirely aside from the physical manifestation requirement. The rule in Texas in recent years has been that recovery for mental anguish by persons not directly injured by the defendant's conduct is limited to those persons who meet a "bystander" test of foreseeability based largely on the seminal decision in *Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968). *See Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837 (Tex.App.—Waco 1982, writ dism'd); *Hastie v. Rodriguez*, 716 S.W.2d 675 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983), extended recovery to wrongful death plaintiffs, but we are aware of no Texas negligence case in which mental anguish damages have been awarded to a third party not either a bystander or a wrongful death plaintiff. *Cf. Jannette v. Deprez*, 701 S.W.2d 56, 61 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) ("In Texas only two situations exist in which one other than the victim of a tort may receive damages for ... mental anguish. The first is in a death case brought under the Wrongful Death Act. The second is in a bystander case...." (citations omitted)); *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 378 (Tex.App.—Austin 1984, writ ref'd n.r.e.).[10]

went to the second hospital, where Mrs. Harmon first saw her husband as he came out of the emergency room.

9. Mrs. Harmon also contends the evidence at trial does show some physical manifestation of her mental anguish. We cannot agree. The only significant evidence on this point was Mrs. Harmon's statement that because of the ordeal of the accident she "became a different person," and a statement by her doctor that the ordeal was "a strain upon her." Neither the doctor nor Mrs. Harmon identified any specific physical consequence of this strain. As the Texas Supreme Court has noted, Texas courts have been quite expansive in determining what constitutes a physical injury. *Moore v. Lillebo*, 722 S.W.2d 683, 686 (Tex.1986); *see also Haught v. Maceluch*, 681 F.2d 291, 299 n. 9 (5th Cir.1982). We find, however, that even liberally applied, the physical manifestation requirement has not been met here. Mrs. Harmon's evidence does no more than state that she suffered mental anguish.

10. Mrs. Harmon relies on *City of Denton v. Page*, 683 S.W.2d 180 (Tex.App.—Ft. Worth 1985), *rev'd on other grounds*, 701 S.W.2d 831 (1986), as a case in which a non-bystander was allowed recovery in a non-death case. In fact, however, the plaintiff in *Page* had sufficient contemporaneous perception of the event to bring herself within the bystander foreseeability test. *Cf. General Motors Corp. v. Grizzle*, 642 S.W.2d 837, 844 (Tex.App.—Waco 1982, writ dism'd).

■ Thus, affirming the award of mental anguish damages to Mrs. Harmon would require us to extend Texas law. We would have to hold that third parties who are neither bystanders nor wrongful death plaintiffs can recover for mental anguish suffered as a result of another's injury and to create a rule that would allow recovery to anyone who suffers mental anguish as a result of an injury to someone to whom they are closely related. We recognize that Texas has expanded the category of persons eligible to recover damages for mental anguish and that the analysis supporting this expansion carried to its logical extreme arguably supports the broad rule Mrs. Harmon suggests. As an *Erie* court, however, it is not our job to lay down broad new rules of state law.

In some circumstances we have been willing, in our role of deciding the case as a state court would, to acknowledge a modest expansion in the law generally and decide a case in light of a new rule. *See, e.g., Mozingo v. Correct Manufacturing Corp.,* 752 F.2d 168, 174–75 (5th Cir.1985). As a rule, however, we do not "adopt innovative theories of recovery or defense for Texas law, but simply ... apply that law as it currently exists." *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1217 (5th Cir.1985). This principle dictates that we reject Mrs. Harmon's position. The broad rule she suggests is unprecedented not only in Texas, but apparently in other jurisdictions as well. In light of longstanding reluctance of the courts to allow recovery for mental anguish and the measured steps of the Texas courts in relaxing barriers to such recovery, we cannot confidently say that the Texas court would allow recovery in this case. We therefore eliminate from the judgment the award of damages for Mrs. Harmon's mental anguish.

## VI

■ Appellants' final argument and Mrs. Harmon's cross-appeal can be easily disposed of. Appellants contend that the district court erred in awarding prejudgment interest on the damage award because the award was not segregated into past and future damages. *See Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 556 (Tex.1985). The district court reasoned that because Mr. Harmon died before trial of causes unrelated to the accident, any damages his estate or Mrs. Harmon could recover necessarily were incurred prior to trial. With the elimination of Mrs. Harmon's mental anguish award, we believe the district court was clearly correct. The jury awarded damages for Mr. Harmon's medical expenses and lost earnings, for the damage to the Harmons' car, and for Mrs. Harmon's loss of consortium. All of this damage necessarily was incurred prior to trial and prejudgment interest was properly awarded. *See Benavidez v. Isles Construction Co.,* 726 S.W.2d 23, 25 (Tex.1987) (allowing recovery of prejudgment interest on identifiable portion of damage award necessarily accrued prior to trial even though special interrogatories did not explicitly require segregation).

On cross-appeal, Mrs. Harmon contends that the district court should not have reduced her recovery by the amount of her husband's comparative fault. She relies on the decision in *City of Denton v. Page,* 683 S.W.2d 180 (Tex.App.—Ft. Worth 1985), *rev'd on other grounds,* 701 S.W.2d 831 (1986). We have previously rejected this portion of *Page* as inconsistent with controlling Texas law. *Mayo v. Tri-Bell Industries, Inc.,* 787 F.2d 1007 (5th Cir.1986). In any event, our elimination of the mental anguish damages makes even reliance on *Mayo* unnecessary as to those damages and Mrs. Harmon now concedes that her loss of consortium damages were properly reduced as derivative of her husband's claim. *See Mayo,* 787 F.2d at 1010; *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978).

## VII

We affirm the judgment in all respects except for the award of mental anguish damages. The judgment of the district court is modified to eliminate the $45,000 awarded to Mrs. Harmon for mental anguish, and as MODIFIED is AFFIRMED.

REAVLEY, Circuit Judge, dissenting:

I dissent only from the denial of the award, based upon a jury verdict, of mental anguish damages. It seems clear to me that the Supreme Court of Texas would not forbid, as a matter of law, the recovery by the wife of these damages.

In several recent decisions, the Texas Supreme Court has indicated its displeasure with longstanding barriers to recovery of damages for mental anguish. In *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex. 1983), the court overruled extensive precedent and allowed recovery of mental anguish damages by wrongful death plaintiffs. In *Moore v. Lillebo*, 722 S.W.2d 683 (Tex.1986), the court held that in such wrongful death actions the plaintiff need not show a physical manifestation of his or her mental anguish. Most recently, and most significantly for this case, the Texas Supreme Court has extended these rulings by holding that "proof of physical injury is no longer required in order to recover for negligent infliction of mental anguish." *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987), *reh'g denied*, 30 Tex.Sup.Ct.J. 479 (June 17, 1987).

Unlike the majority, I read *Garrard* as unambiguously signalling the Texas court's desire to abandon all artificial restrictions on mental anguish recovery, including the bystander test used by the majority to defeat Mrs. Harmon's claim. That test, followed in recent years by intermediate Texas courts, holds that mental anguish suffered by a person as a result of injury to another is not foreseeable unless the person actually observed the injury-producing conduct. *See, e.g., Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ); *Jannette v. Deprez*, 701 S.W.2d 56, 61 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). As the majority opinion demonstrates, the bystander test operates mechanically to deny recovery as a matter of law without any further inquiry into the foreseeability of the plaintiff's injury. The Texas Supreme Court, however, has never explicitly adopted this test and *Garrard* leads me inescapably to the conclusion that the Texas court would grant Mrs. Harmon recovery despite her absence from the scene of the accident.

In abandoning the physical manifestation requirement, the Texas court noted that "[d]evelopment and administration of the tort [of negligent infliction of mental distress] have been inconsistent and confusing." 730 S.W.2d at 651. It announced its desire to "insure the public is free from unwarranted restrictions on the right to seek redress for wrongs committed against them," *id.* at 654 and decried the physical manifestation requirement as just such an "arbitrary restraint," *id.* at 651. The court approvingly observed that the seminal Texas case on negligent infliction of mental anguish, *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890), had, with the exception of requiring a physical manifestation, granted recovery for mental anguish "using traditional tort concepts." *Garrard*, 730 S.W.2d at 652.[1] This analysis—especially in light of a narrower ground for decision[2]—is strong evidence that the Texas court would not refuse recovery to a spouse of a seriously injured person on the sole ground that the spouse did not actually observe the accident. Inasmuch as the Texas court would allow Mrs. Harmon to recover had her husband died as a result of

1. The plaintiff in *Hill*, of course, observed the injury occur and this was a factor in the determination that her injuries were proximately caused by the defendant's conduct. In discussing *Hill*, however, the *Garrard* court emphasized that the proximate cause decision was based solely on ordinary tort principles. 730 S.W.2d at 652 ("The single deviation [in *Hill*] from traditional tort principles involved the element of damages."). It is apparent, then, that the Texas court does not view *Hill* as imposing any mechanical limitation on the foreseeability determination.

2. As a separate opinion in the case noted, 730 S.W.2d at 654–655 (Spears, J., concurring and dissenting), *Garrard* could have been decided on the ground that Texas has never required a physical manifestation when the defendant's wrongful conduct was mishandling a corpse. *See Classen v. Benfer*, 144 S.W.2d 633 (Tex.Civ. App.—San Antonio 1940, writ dismissed judgmt cor.).

the accident, *see Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983), I believe the Texas court would view application of the bystander limitation in this case as just the kind of arbitrary restriction it condemned in *Garrard.*[3]

Distinctions exist, of course, between a plaintiff who viewed the accident and one who did not, and between a plaintiff whose loved one died and one whose loved one survived. It is more likely, and thus in a sense more foreseeable, that the plaintiff who actually witnessed the accident will suffer a serious mental injury. Similarly, death of a loved one is in many cases more traumatizing than even a serious injury to a loved one. I do not suggest that no rational basis exists for cutting off liability when the plaintiff did not witness the accident and no death ensued. I am persuaded, however, that the Texas court would view these distinctions as insufficient to justify a rule mechanically precluding recovery to persons who can demonstrate a real mental injury. In expanding recovery for mental anguish, the court has not focused on narrow distinctions but has instead emphasized the reality of emotional injuries and condemned legal rules that artificially restrict recovery for such injuries. To state that witnesses to an accident often suffer mental injury is not to deny that severe mental anguish also is suffered by the person who receives the dreaded phone call that her spouse has been injured in a car accident. Nor does the trauma of death diminish the reality of seeing a loved one endure the pain and suffering of a severe and lingering injury. Again, I note that Mrs. Harmon would be granted recovery had her husband died from the accident. I think the Texas court would view her emotional injury as no less real, and no less foreseeable, simply because her husband survived the accident.

---

3. Even before *Garrard,* commentators on Texas law suggested that *Sanchez* signalled the Texas court's willingness to award mental anguish damages in some circumstances even though the plaintiff did not witness the accident. Cantu, Negligent Infliction of Emotional Distress: Expanding the Rule Evolved Since *Dillon,* 17 Tex.Tech.L.Rev. 1557, 1570–76 (1986); Powers, Annual Survey of Texas Law: Torts—Personal, 38 Sw.L.J. 1, 31–32 (1984); Note, Texas Bystander Recovery: In the Aftermath of *Sanchez v. Schindler,* 35 Baylor L.Rev. 883, 894 (1983).

Indeed, the last of these commentators advocates a "pure negligence" approach to determining liability in cases such as this. 35 Baylor L.Rev. at 899–901. This case, however, does not require a definition of the ultimate scope of the right to recover for negligent infliction of mental anguish in Texas. I only say that Texas would not deny Mrs. Harmon recovery for mental anguish merely because she did not witness the accident and her husband did not die from the accident.

