**Bobby Lynn BLANKENSHIP, Plaintiff–Appellant,**

v.

**KERR COUNTY, TEXAS, Carl E. Biermann and Cliff Greeson, Defendants–Appellees.**

No. 88–5568.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1989.

Rehearing and Rehearing En Banc Denied Sept. 15, 1989.

Randall B. Richards, A. Scott Campbell, Hollon, Marion & Richards, Boerne, Tex., for plaintiff-appellant.

Dawn Bruner Finlayson, John M. Pinckney, III, Matthews & Branscomb, San Antonio, Tex., for defendants-appellees.

Before CLARK, Chief Judge, and RUBIN, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The district court granted summary judgment dismissing this § 1983 action brought by an epileptic who alleges that the police stopped him without cause, arrested him and treated him as if he were drunk, and caused him to sustain physical and emotional injuries as a result of a preventable seizure he suffered while being detained in the drunk tank. The court also dismissed the plaintiff's state common law claims under the Texas Tort Claims Act and for negligent and intentional infliction of emotional distress. Because genuine issues of material fact preclude summary judgment on the federal claims, and because the plaintiff has also stated viable claims under state law, we reverse and remand for further proceedings.

I.

According to the depositions presented in support of and in opposition to the motion for summary judgment, Bobby Lynn Blankenship had parked his car one morning at 2:20 a.m. beside his roadside mailbox to check his mail. Officer Biermann drove up with red and blue lights flashing and blocked Blankenship's path by parking in front of him headlights to headlights. Biermann claims that Blankenship had attempted to drive onto the highway facing oncoming traffic but had aborted the maneuver. Blankenship denies that he had attempted to enter the highway, asserting that his car had remained stationary while he checked his mail. He further asserts that he gave the police officer no other reason to block his path.

According to Blankenship, Biermann came up to his car, took the driver's license which Blankenship had held out to him without any exchange of words, checked the license, and immediately told Blankenship that he was drunk. Biermann, on the other hand, claims that he told Blankenship he was drunk because Blankenship had got out of his car, walked over to meet him, staggered, and spoke in a slurred manner. Blankenship counters that he never left his car, and that Biermann had had no occasion to hear him speak before he accused Blankenship of being intoxicated. Blankenship subsequently admitted that he had drunk one or two beers, but Biermann did not administer a breath-alcohol or other sobriety test.

After telling Blankenship he was drunk, Officer Biermann nonetheless instructed him to drive his car to a parking lot about half a mile away, to leave the auto there, and to walk home. Blankenship asserts that he did so and began walking in misting rain, but soon began to feel ill. Although the parties disagree in some minor respects about what happened next, it appears that Blankenship returned to the parking lot to seek help and found Biermann, who had been joined by one or two additional officers, searching his car. Using what in retrospect seems to have been a poor

choice of words, Blankenship told the officers he was "getting sick." According to Blankenship, an officer who had joined Biermann yelled profanities at him and told him to walk home, which he once more began to do. Before Blankenship had crossed the parking lot, however, Blankenship asserts that Biermann, in the belief that Blankenship was not following instructions, arrested him for drunken driving. After placing Blankenship under arrest, Biermann went through his wallet, which contained a medical alert medallion warning that he was an epileptic.

Biermann took Blankenship to the local jail, where Blankenship told the booking officer that he was taking the anti-seizure medication dilantin and that he was an epileptic. Blankenship claims he also said that he felt as if he were about to have a seizure, and needed a doctor. He refused to take a breathalyzer test, but volunteered to take a blood-alcohol test. Blankenship maintains that, after a heated exchange, Biermann placed him in the drunk tank, a dark, odorous, concrete cell that contained no padding whatsoever. There is some evidence, however, that a different officer consigned Blankenship to the drunk tank without consulting Biermann.

While confined in the drunk tank, Blankenship suffered a grand mal epileptic seizure. After discovering him in this condition, jail personnel telephoned Dr. Luna, the physician on call. Dr. Luna's deposition states that he advised the jail staff to let Blankenship "ride out" the seizure, but to take him to the hospital if the seizure seemed serious. The deposition also indicates, however, that he may not have been given complete or wholly accurate information, and the jail staff appears to have told him that Blankenship was merely shamming.

Despite the doctor's instructions, Blankenship claims that the jail staff tried and failed to force dilantin down his throat. They monitored his condition to some extent, but did not provide a pillow for his head. Blankenship awoke the next morn-

ing in considerable pain, face down in a puddle of urine. Blankenship claims that as a result of his arrest and incarceration, and convulsions during which he banged his head repeatedly against the concrete, he suffered physical and emotional trauma.

Blankenship brought this suit based on 42 U.S.C. § 1983, the Texas Tort Claims Act, and the Texas common law of negligent and intentional infliction of emotional distress against Kerr County, Texas, Sheriff Cliff Greeson, Officer Carl Biermann, and Dr. Joseph Luna as a result of his arrest and subsequent treatment. The district court dismissed Blankenship's state law claims as a matter of law and granted summary judgment on the § 1983 claims against all defendants except Dr. Luna. Blankenship moved to reconsider, but the district court denied his motion. The claims against Dr. Luna subsequently were dismissed without prejudice at Blankenship's request so that he could appeal the court's decision as to the other parties.

## II.

Blankenship first challenges the district court's summary judgment on the ground that there are genuine issues of material fact concerning the legality of his initial stop. Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." [1]

It is well established that a policeman may not stop the driver of an automobile for investigation without at least some reasonable basis for suspecting the driver of a violation of law.[2] There is a conflict in the testimony as to whether Blankenship gave Biermann any legitimate reason to pull up in front of his car, to detain him, or to investigate his conduct. Moreover, the district court stated no reasons to justify dismissing Blankenship's claim based on the initial stop. We therefore reverse the summary dismissal of this claim.

---

1. Fed.R.Civ.P. 56(c).

2. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

Blankenship next challenges the summary judgment dismissing his claim that Biermann arrested him illegally. The district court dismissed this claim because "it is uncontroverted that Plaintiff appeared to be drunk prior to his arrest for intoxification (sic)." The court justified this assertion, however, by citing a portion of Blankenship's deposition that describes his visual "aura" rather than his external appearance, and Blankenship nowhere concedes that he appeared drunk rather than ill. At most, Blankenship admits that he had had some trouble with his speech, but the exact nature of that trouble is not clear. Moreover, Blankenship asserts that Biermann willfully and in bad faith ignored both evidence that Blankenship was ill rather than drunk and his request for medical assistance. We therefore conclude that there are genuine issues of material fact concerning whether Biermann had probable cause to arrest Blankenship, and reverse the summary judgment on this issue.

Blankenship further challenges the district court's rejection of his claims, relevant to several causes of action, that the defendants were either deliberately indifferent to his medical needs or intended to punish him. We find that the evidence in the record does not foreclose these claims. Blankenship asserts that jail personnel were aware of his medical needs, but that because they were angry at him, they deliberately placed him in an unpadded cell. Further development of the record may justify entering summary judgment on these claims in favor of some of the defendants, but the district court's decision in favor of all defendants based solely on the fact that jail personnel called Dr. Luna for medical advice cannot stand.

### III.

Blankenship contends in addition that the district court should not have granted summary judgment on his claim that his initial stop, arrest, and inadequate medical care were due to the official policy or deliberate indifference of Sheriff Greeson and Kerr County. The district court rejected these claims, to the extent they survived its finding that Biermann had had probable cause to arrest Blankenship, because Blankenship had failed "to identify any specific harm caused by the alleged lack of medical training of county employees." Blankenship presented a good deal of evidence, however, that he had sustained injuries to his head because jail employees had failed to inform the doctor of his condition accurately, to follow the doctor's advice by hospitalizing him if the seizure appeared serious, or to provide protection for Blankenship's head during his convulsions even though the doctor had in no way advised them not to do so. The summary judgment, insofar as it is based on a lack of proof of causation, therefore cannot be sustained.

The court also concluded that Blankenship had failed to present evidence that Sheriff Greeson had been deliberately indifferent "to providing medical training to county personnel." The evidence of Sheriff Greeson's alleged indifference is indeed somewhat sparse, but might suffice to support an inference that he and the county deliberately ignored a demonstrated need to improve the medical training of the jail staff. We do not rule on the question, however, because the Supreme Court has recently announced new principles governing Blankenship's claim. In City of Canton, *Ohio v. Harris*,[3] the Court held explicitly for the first time that inadequate training may "serve as the basis for § 1983 liability," though "only where the failure to train amounts to deliberate indifference to the rights of persons with whom [state actors] come into contact."[4] The Court also explained this holding in some detail, establishing principles that might require the rejection of Blankenship's claims even if they would have been viable under prior law. We therefore remand Blankenship's claims that Sheriff Greeson or Kerr County are liable for their deliberate indifference to medical or police training for reconsider-

---

**3.** —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

**4.** *Id.* 109 S.Ct. at 1204.

ation under the principles established in *Harris.*

## IV.

Blankenship correctly contends that the district court should not have held the defendants to be qualifiedly immune. The court did not specify which defendants were immune or why they were immune, and instead merely reaffirmed a prior unexplained ruling. We therefore reverse the court's holding with respect to this issue. Blankenship also is correct that there is no basis in law for the district court's holding that "[b]oth Kerr County and Sheriff Greeson are entitled to assert their governmental immunity and ... to have this claim dismissed as to them." The claim in question appears to be based on the Eighth Amendment to the United States Constitution, yet one of the two cases the court cites discusses only governmental immunity under the Texas Tort Claims Act.[5] The other case concerns immunity under the Eleventh Amendment,[6] which "has no application to claims seeking to impose municipal liability or claims seeking to impose personal liability"[7] under § 1983.

## V.

■ Finally, Blankenship contends that the district court should not have dismissed his three pendent state-law causes of action for failure to state a claim. First, Blankenship correctly maintains that the district court erred in holding that "Texas law does not recognize an independent cause of action for negligent infliction of emotional distress." In *St. Elizabeth Hospital v. Garrard,*[8] the Texas Supreme Court unam-

biguously declared, "Texas joins an established trend in American jurisprudence which recognizes the tort of negligent infliction of mental anguish without imposing arbitrary restrictions on recovery in such actions."[9] The *Garrard* decision changed prior law, moreover, not by creating a new cause of action, but by rejecting the requirement that plaintiffs must demonstrate that their mental anguish was accompanied by physical manifestations. "Texas first recognized the tort of negligent infliction of mental anguish," the court noted, "in *Hill v. Kimball,*"[10] a case decided in 1890.

The district court based its erroneous conclusion in part on *Harmon v. Grande Tire Co.,*[11] a Fifth Circuit case stating that *Garrard* is "directed only to the matter of proof."[12] This ambiguous dictum does not mean that *Garrard* is always to be construed narrowly, however, or that, despite the express words of *Garrard*, this circuit has concluded that Texas recognizes no cause of action for negligent infliction of emotional distress. *Harmon* instead merely limits recovery by plaintiffs who have suffered emotional distress because of an injury to a loved one that they did not witness.[13] It does not hold, as the district court suggests, that "a plaintiff must first establish an initial cause of action before he can show his entitlement to recover damages for negligent infliction of emotional distress." *Garrard* holds precisely the reverse, and *Harmon* is not to the contrary.

The district court supplemented its holding that Texas recognizes no cause of action for negligent infliction of emotional anguish by asserting that Blankenship had "failed to identify negligent conduct which would give rise to this cause of action with

**5.** *See Diaz v. Central Plains Regional Hospital,* 802 F.2d 141, 144–45 (5th Cir.1986).

**6.** *See Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945).

**7.** M. Schwartz & J. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 6.13 at 140 (1986). *See also Owen v. City of Independence, Mo.,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

**8.** 730 S.W.2d 649 (Tex.1987).

**9.** *Id.* at 654.

**10.** *Id.* at 652 (citing *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890)).

**11.** 821 F.2d 252 (5th Cir.1987).

**12.** *Id.* at 258.

**13.** *Id.* at 259.

regard to his arrest or incarceration." As noted above, however, Blankenship plainly asserts that the defendants acted negligently and has presented ample evidence of negligence that a jury might believe. The dismissal of Blankenship's claim for negligent infliction of emotional distress therefore must be reversed.

Blankenship's second pendent claim for intentional infliction of emotional distress also, he asserts, should not have been dismissed. Once more, his argument must be accepted. As the United States District Court for the Eastern District of Texas recently noted, relying on *Tidelands Automobile Club v. Walters,*[14] a 1985 Texas appellate decision that settles the question explicitly, "Texas law recognizes the independent tort of intentional or negligent infliction of emotional distress."[15]

The defendants argue that we should ignore the *Tidelands* decision because thirty-five years ago the Texas Supreme Court refused to recognize intentional infliction of emotional distress as actionable[16] and that court has not spoken directly to the issue since. This argument shows a fundamental misunderstanding of the responsibility of a federal court in a diversity case, which is to "determine issues of state law as it believes the highest court of the state would determine them."[17] *Tidelands* bases its conclusions on a thorough analysis of Texas law, and we see no reason to believe that the Texas Supreme Court, after having expanded recovery for emotional distress in *Garrard,* would refuse to follow it. Accordingly, we hold that Texas law does recognize the tort of intentional infliction of emotional distress. It may be that Blankenship's claim for this tort ultimately will be unable to withstand a motion for summary judgment, but that question is not now before this court.

The third and last pendent claim that Blankenship seeks to have reinstated is his claim under the Texas Tort Claims Act. Because the district court disposed of this claim without stating reasons, we reverse the summary judgment and remand for a redetermination of the issue.

■ It may be that the district judge dismissed Blankenship's state law claims in part because, having granted summary judgment on the federal law claims, he felt that he should not proceed with a case that concerned only issues of state law. We note, however, that a federal court has the discretion to decide pendent state law claims in a case originally based on federal question jurisdiction even after all federal claims have been dismissed.[18] Thus, should the district court decide to grant summary judgment for the defendants on Blankenship's federal claims after the record has become more developed, it may nevertheless proceed to entertain his state law claims.

## VI.

The district court's order granting summary judgment to the defendants on Blankenship's federal law claims and dismissing his state law claims is REVERSED. The case is REMANDED for further proceedings consistent with this opinion.

---

14.  699 S.W.2d 939 (Tex.App.1985), *writ ref. n.r.e.*

15.  *Abston v. Levi Strauss & Co.,* 684 F.Supp. 152, 157 (E.D.Tex.1987). *See Tidelands,* 699 S.W.2d at 941–44.

16.  *See Harned v. E–Z Finance Co.,* 151 Tex. 641, 254 S.W.2d 81 (1953).

17.  19 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 4507 at 89 (1982).

18.  *See* 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3567.1 (1984).